IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

DILBAR GUL DILBAR a/k/a DILBAR GUL TAJ
ALI KHAN,

Defendant.

25-MJ-4055

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION FOR A STAY OF THE MAGISTRATE JUDGE'S RELEASE ORDER

THE UNITED STATES OF AMERICA, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Meghan K. McGuire, Assistant United States Attorney, respectfully moves, pursuant to Title 18, United States Code, Section 3145(a)(1), for an Order revoking Magistrate Judge Colleen D. Holland's Order releasing the defendant, entered on May 13, 2025, and further moves for an Order staying said Order of the Magistrate Judge until such time as the Court can hear and determine the government's motion for review of the Magistrate Judge's determination on detention. This brief addresses the grounds for a stay of the Magistrate Judge's Release Order.

## FACTUAL BACKGROUND

As is set forth in the Criminal Complaint and was elaborated upon by the government during its detention hearing proffer, the Afghan Special Immigrant Visa ("SIV") Program offers admission to the United States to Afghan nationals who supported the United States and its allies during the war in Afghanistan by serving in qualified employment for at least two years.

1

On and off between 2009 and 2011, the defendant worked as a translator in Afghanistan. But he never made it to the requisite two-year mark.[1]  He was terminated early because he stopped showing up to work.

Five years after he was terminated from his position, in 2016, the defendant submitted the first of two Afghan SIV applications.  The first step in obtaining an Afghan SIV is to obtain approval from the Chief of Mission in the US Embassy Kabul, commonly referred to as "COM Approval."

The defendant's COM approval was denied because he failed to provide sufficient documentation to verify his employment.  At this point, someone with a legitimate basis for obtaining an Afghan SIV could do one of two things: (1) obtain the additional paperwork and submit it with an appeal of the denial letter or (2) seek a waiver of the verification requirement.  This waiver was available to people who were unable to obtain documentation because there were circumstances that made it difficult or impossible for them to do so.

The defendant did neither.  Instead, he created a fraudulent COM approval letter, and he proceeded to file an Afghan SIV application with that fraudulent approval letter.  The letter was identified as a forgery, and this first visa application was denied in January 2018.

Over the next three years, the defendant reached out to various companies with operations in Afghanistan.  He never worked for any of these companies.  But the defendant wrote and claimed that he had worked for them.  He then asked for an employment letter.

---

[1] The government was unable to determine at the time of the detention hearing whether the defendant had completed sufficient service to qualify for an Afghan SIV.  It has since determined that he did not.

He used different names and dates of birth, hoping one of those companies had bad enough record-keeping that they would not realize he never worked for them.  But each of these companies denied his request, because he never worked for any of them.

When the defendant's efforts to trick a legitimate company into issuing him an employment letter failed, he took the next step and purchased fraudulent employment letters.

The first fraudulent employment letter was from a company that is now known to law enforcement for selling fraudulent employment letters to visa applicants for a fee.  In fact, according to the Department of State's ("DOS") records, over 100 letters of employment that have been submitted by this company have been identified as fraudulent.  None were legitimate.

The second fraudulent employment letter was from an individual named "Ray James."  Law enforcement is now aware that Ray James was posing as a supervisor for a United States military contractor and, in exchange for a fee, would issue visa applicants fraudulent employment letters and then verify that employment with the DOS.  The defendant's email shows him communicating with Ray James about this letter of recommendation and the DOS's ensuing efforts to verify its authenticity.

The third fraudulent letter of recommendation that the defendant obtained and submitted for COM approval was from an individual named "Arlene Seret."  This letter claimed that Arlene Seret was a supervisor of employment in Afghanistan but lived here, in Rochester, NY, in the same house where the defendant now resides.

Armed with these three fraudulent employment letters, in 2021, the defendant made his second attempt at obtaining a COM approval letter. This time, the fraud was not identified. The defendant received a COM approval letter, which allowed him to proceed and file a second Afghan SIV application.

Importantly, the visa application (Form 260) asks the applicant, under penalty of perjury, whether he or she has ever previously been denied a visa. When the defendant completed his second Afghan SIV application, the defendant lied and answered "no." If he had told the truth and admitted that he was previously denied an Afghan SIV in 2016, his 2021 application never would have been granted.

Instead, because of this additional lie, the defendant's second Afghan SIV application was granted. And as a derivative of the defendant's Afghan SIV—which was obtained by fraud—his wife and their children were also granted visas.

In April 2024, the defendant entered the United States, moved to Rochester, New York, and obtained his green card.

One of the first things the defendant did when he arrived was apply for a New York State license to act as a security guard. That is what tipped law enforcement off to his presence.

Since arriving, the defendant has continued to be in contact with Ray James, the individual who falsified his second letter of employment. They have exchanged identification documents. And it appears that the defendant has made an additional payment to this Ray James person.

4

The defendant's phone records also show that, since arriving in the United States, he has been in contact with a second individual who is currently being investigated for large-scale fraud related to the Afghan SIV program

And finally, when law enforcement searched the defendant's residence, they found visa and identity documents belonging to other Afghan nationals, who do not live in that residence. There appeared to be no legitimate reason for the defendant to have these other people's immigration and identity records.

## PROCEDURAL HISTORY

On April 29, 2025, the defendant was arrested and charged by criminal complaint with committing visa fraud in violation of Title 18, United States Code, Section 1546(a). (Dkt. 1.) At the initial appearance, the government moved to detain the defendant under Title 18, United States Code, Section 3142(f)(2)(A), on the grounds that there is a serious risk of flight.

Prior to the detention hearing, the United States Probation Office prepared a Pretrial Services report, which concluded that there was no condition or combination of conditions that would assure the defendant's appearance. Probation therefore recommended detention.

The Magistrate Judge held a detention hearing on May 9, 2025, and both the government and the defendant proceeded by proffer. After outlining the facts set forth above, the government argued that each of the "Section G" factors set forth in Title 18, United States Code, Section 3124(g) weighed in favor of detention.

With respect to the first Section G Factor, the nature and circumstances of the offense, the government argued it weighed heavily in favor of detention because visa fraud is an

extremely serious offense that undermines our national security.  It also undermines the process for other visa applicants who want and deserve to be in the United States, submit lawful visa applications, and are patiently waiting to be approved.

The government argued that the second Section G Factor, the weight of the evidence against the defendant, also weighs in favor of detention.  The government has ample proof of multiple instances in which the defendant engaged in fraud to obtain his visa and ultimately his green card.  Proof of just one of those frauds will be sufficient to obtain a conviction in this case.

The government argued that the third Section G Factor, the history and characteristics of the defendant, and in particular his ties to the Western District of New York, also weighs in favor of detention because the defendant has no ties to the Western District of New York.  He and his family have lived here for only a year.  If the defendant is convicted in this case, he, his wife, and four of his five children are all at risk of deportation.  If the defendant was desperate enough to lie to the United States government to get his family out of Afghanistan, then there is no question that he will be desperate enough now to flee while this case is pending and avoid being sent back to Afghanistan.  It is the same cots benefit analysis for him.

Finally, with respect to the fourth Section G factor, the nature and seriousness of the danger to the community if the defendant were released, the government argued that the Afghan SIV program has extensive vetting procedures for a reason.  When people lie to evade the vetting process, they are inherently placing our country at risk.

The Magistrate Judge took the parties' arguments under advisement until May 13, 2025, when she issued an oral decision releasing the defendant under certain conditions,

which included a third-party custodian, a $6,000 cash bond, surrender of the defendant's and his minor children's passports, and home detention with electronic monitoring. (Dkt. 9.)

At the government's request, the Magistrate Judge stayed her Release Order until 5PM on May 14, 2025. (Dkt. 9.) The defense noted that it planned to oppose any further stay in front of the District Court.

On the morning of May 14, 2025, the government filed its Notice of Motion and Motion for: (1) an Order revoking the Magistrate Judge's Release Order, pursuant to Title 18, United States Code, Section 3145(a)(1); and (2) an Order staying the Magistrate Judge's Release Order until such time as this Court can hear and determine the government's motion for review. (Dkt. 10.) This brief addresses the grounds for a stay of the Magistrate Judge's Release Order. The defense has indicated that it plans to submit briefing on this issue as well.

## APPLICABLE LAW

"If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). "The motion shall be determined promptly." *Id.*

District courts review such orders *de novo*, and in so doing may make new factual findings. *United States v. Dominguez*, 509 F. App'x 28, 30 (2d Cir. 2013) (summary order).

Section 3142(f) requires the Court to detain a defendant until the government's motion for detention is fully resolved. 18 U.S.C. § 3124(f) ("During a continuance, such person shall be detained."). This requirement carries through to the District Court's review of the

Magistrate Judge's decision. *See United States v. Kerr*, No. 3:19-CR-296-L, 2020 WL 1158521, at *7 (N.D. Tex. Mar. 10, 2020). ("Similarly but again analogously, even a defendant who is appealing a magistrate judge's pretrial release or detention order under 18 U.S.C. § 3142 remains in custody – despite the absence of a conviction and the presence of the presumption of innocence – because the status quo under 18 U.S.C. § 3142(f) is temporary custody while the motion for detention is pending.").

The Western District of New York's Local Rules of Criminal Procedure also expressly contemplate that parties can obtain a stay of a Magistrate Judge's order pending review by the District Court. Local Rule 59(c)(1) states that "[a]ll orders of the Magistrate Judge authorized by 28 U.S.C. § 636(b)(1)(A) shall be effective *unless and until a stay is obtained* or the order is otherwise reversed or vacated by the District Judge." Loc. R. Crim. P. 59(c)(1) (emphasis added).

Accordingly, Courts in this district routinely grant stays when the government moves to revoke a Magistrate Judge's release order. *See, e.g., United States v. Zaso*, No. 22-CR-74-A, 2022 WL 4077675, at *1 (W.D.N.Y. Sept. 6, 2022), *aff'd*, No. 22-2050, 2022 WL 17741537 (2d Cir. Oct. 31, 2022) ("On July 21, 2022, the Government filed a motion for review of the bail determination.  The following day, the Court granted the Government's request for a stay of the release order for the pendency of the bail revocation appeal."); *United States v. Williams*, No. 16-MR-147(LJV)(JJM), 2017 WL 104643, at *1 (W.D.N.Y. Jan. 11, 2017) ("Judge McCarthy again ordered the defendant released on conditions but stayed the release pending this Court's resolution of the government's supplemental motion for revocation.")

**DISCUSSION**

Under Title 18, United States Code, Section 3142(f), the Magistrate Judge's Release Order should be stayed until the government's motion for revocation is finally resolved by this Court.

The government is aware that defense counsel has argued in other cases that the standard for a stay pending appeal to an appellate court, as articulated in *Nken v. Holder*, 556 U.S. 418 (2009), applies to the current motion. In *Nken v. Holder*, the Supreme Court said the following:

> A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.
>
> The fact that the issuance of a stay is left to the court's discretion does not mean that no legal standard governs that discretion. A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles. As noted earlier, those legal principles have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. at 433-34 (quotations and citations omitted).

The government does not concede that the *Nken* standard applies here because this is not an appeal of a final order to a Circuit Court. This is a motion for revocation of a Magistrate Judge's order to a District Court.

Admittedly, parties often colloquially refer to the review of a Magistrate's release order as an "appeal," but it is not. The Bail Reform Act permits the Government to "file, with the court having original jurisdiction over the offense, *a motion* for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a) (emphasis added). Therefore, *Nken*'s standard for stays pending appeal to courts of appeal from final orders (which this is not), is inapplicable. Rather, § 3142(f) governs and requires that the Court keep the defendant in custody while litigation of the government's motion continues.

Nonetheless, as is set forth below, even applying the *Nken* standard, the Court should stay the defendant's release pending its resolution of the government's motion for revocation.

1) *The Government is likely to succeed on the merits of its motion*

The government has a strong chance of prevailing on the merits of its motion. The government will fully brief the merits of its motion for revocation later, pursuant to the briefing schedule set by this Court.

In summary, each of the § 3142(g) factors weigh in favor of detention. In fact, the Magistrate Judge appears to have agreed that the first, second, and fourth factors weigh in favor of detention.[2] However, she noted that the third factor was the most important to her analysis and found that it weighed in favor of release. The Magistrate Judge appeared to place significant weight on what she characterized as a lack of criminal history, violence, and

---

[2] This discussion is based on the government's recollection of the Magistrate Judge's oral decision and notes taken during the issuance of that decision. The government has ordered expedited transcripts of the hearing and decision and will provide them to this Court as soon as they are available.

association with violent organizations by the defendant. But there was nothing in the record to support this finding.

The defendant is 33 years old and lived outside of the United States until approximately one year ago. The Pretrial Services Report, when addressing his criminal history, stated, "[a] criminal record check conducted through the National Crime Information Center (NCIC), state, and local records revealed no criminal history for the defendant." However, those records would only show arrests and convictions that occurred in the United States over the past year. Probation has no access to criminal records in Afghanistan, where the defendant lived almost his entire life. So the Pretrial Services Report did not provide any information—one way or the other—about the defendant's criminal history during the first 32 years of his life.

The government was not able to present any evidence regarding the defendant's criminal history, past violence, or violent associations during the detention hearing. But it is not reasonable to infer from this that the defendant has no history of criminal conduct, violence, or association with violent organizations. Again, it is simply a lack of information in one direction or the other.

To the government's recollection, the defense likewise said nothing on these points. To the extent the defense did say anything (and the government simply does not remember), the defendant's representations about his own criminal history are not reliable. The government proffered evidence that the defendant engaged in a sustained course of fraud spanning from 2016 through the present day and that the fraud included multiple instances of lying to the United States government. There is thus no basis to credit the defendant's

assertion—if in fact he made one—that he has no criminal history. The government has shown that the defendant's representations, particularly his representations about his own identity and history, are inherently unreliable.

Neither the Presentence Investigation Report, the government, nor the defendant offered any reliable evidence on this point. At best, then, these factors should have been neutral and played no role in the ultimate outcome. Instead, they were interpreted as a credit toward the defendant and tipped the scales in favor of release. The Magistrate Judge's decision was swayed by findings of fact that are unsupported in the record.

Once these considerations are removed from the analysis, each of the Section G factors weighs firmly in favor of detention. Thus, the government is likely to succeed on the merits of this motion.

The fact that the Magistrate Judge denied the government's detention motion is irrelevant to this analysis.[3] It is well settled that this Court's review of the Magistrate Judge's Decision is *de novo*, meaning that this Court cannot give any deference to, and is not in any way bound or constrained by, the Magistrate Judge's determination. This Court is also permitted to receive additional information that was not presented to the Magistrate Judge. As such, it is for this Court to determine whether the government is likely to succeed.

---

[3] If it were relevant, then no appellant would ever be able to obtain a stay, because by definition the appealing party's motion has always been denied by the lower court.

2)  *The Government will be irreparably injured absent a stay*

The government will be irreparably injured if this stay application is denied and the defendant is released pending this Court's determination on the merits.  As a threshold point, the requested stay continues the *status quo* and makes imminent sense in this expedited proceeding.

But beyond that, and as will be set forth in greater detail in the government's memorandum of law in support of the merits of its motion, there is a serious risk that the defendant will flee while the motion is pending.

The Magistrate Judge's conditions do little to limit that risk.  If the defendant decides that he wants to flee, either with or without his family, none of the proposed conditions will stop him.

For example, home detention is typically not a condition that is imposed to address risk of flight precisely because it does nothing to prevent flight.  A defendant who wants to flee will cut their monitoring bracelet and flee.  It could take hours or even days for the probation officer to realize that the bracelet has been cut.  As such, this condition is typically reserved for defendants who are restricted from entering certain areas—like sex offenders who cannot enter school zones—on release.  It is not typically imposed for defendants who are flight risks.

Similarly, the $6,000 cash bond will not deter the defendant from fleeing because it is highly unlikely that he will be the one posting that bond.  During the detention hearing, the defense repeatedly referenced community members and religious groups that were supporting

the defendant. It is very likely that, at this moment, these exact people and organizations are fundraising to post the cash bond on the defendant's behalf. If the defendant decides he wants to flee, the thought of losing $6,000 that does not belong to him or anyone that he has known for more than a year will not stop him. It will not be his money, and it will not be the money of people that he has known or cared about for very long. Thus, it is no deterrent.

Finally, with respect to the proposed condition that he surrender his passports and his children's passports, the Magistrate Judge already acknowledged that the defendant has connections who can obtain fraudulent identification documents for him and his family. He has already used these connections to get into the United States. There is no reason to doubt that he can and will use those connections again to either flee to another country or disappear within the United States (which is very possible and does not require a passport).

The defendant's past conduct and current circumstances demonstrate that he is at high risk of flight and, if he does flee while the government's motion is pending, then the government will be irrevocably harmed. It will completely deprive the government of any meaningful review of the Magistrate Judge's decision and could lead to years of efforts to relocate the defendant.

### 3) The issuance of the stay will not substantially injure the defendant

The Bail Reform Act requires the government's motion to be heard "promptly." 18 U.S.C. § 3145(a)(1). The government has already ordered expedited transcripts of the detention hearing and is prepared to submit its brief on the merits of its motion shortly after those transcripts are finished. This motion can be heard and decided quickly. Thus, it will not unduly lengthen the amount of time that the defendant remains incarcerated while the

merits of this motion are addressed.  Given the government's and the public's strong interest in having the merits of its motion fully addressed by the Court, the brief additional period of incarceration is not unreasonable and will not substantially injure the defendant.

4)  *The public interest lies in favor of detaining the defendant pending resolution of the government's motion*

Finally, as the Magistrate Judge repeatedly acknowledged, there is a strong national interest in the government's ability to prosecute this case, which will be completely undermined if the defendant is released and allowed to flee during the pendency of this motion.  The defendant evaded the United States' significant security measures and was able to unlawfully gain entry to this country.  That puts our national security at risk.

## CONCLUSION

Based on the foregoing, the government respectfully requests that the Court stay the Magistrate Judge's Release Order until the government's pending motion for revocation is decided.

DATED: May 14, 2025

MICHAEL DiGIACOMO
United States Attorney
Western District of New York

By: *Meghan K. McGuire*
Meghan K. McGuire
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
100 State Street, Suite 500
Rochester, New York 14614
(585) 399-3922
Meghan.McGuire@usdoj.gov

15